JET LINE SERVICES, INC. vs. AMERICAN EMPLOYERS
INSURANCE CO. & others.[1]

Suffolk. January 5, 1989. — April 24, 1989.

Present: WILKINS, LIACOS, ABRAMS, & LYNCH, JJ.

*Insurance*, Coverage, Disclaimer of liability, General liability insurance,
Unfair act or practice. *Estoppel. Consumer Protection Act,* Unfair act
or practice, Insurance, Attorneys' fees, Businessman's claim.

In the circumstances of a civil action wherein this court determined that a
certain insurance policy by reason of an exclusionary clause did not
provide coverage for a property damage claim, the court then undertook
to determine whether an estoppel basis for the insurer's liability was
appropriate. [708, 710-713]
An insurance company which issued a comprehensive general liability
insurance policy with a broad form comprehensive general liability en-
dorsement was estopped to deny coverage for certain property damage,
excluded under the terms of the endorsement, in circumstances where
the insurer had treated a prior similar property damage claim of the
insured as not excluded; where the insurer then negotiated a renewal of
the policy with higher rates predicated on coverage of the prior claim;
and where the insured had reasonably relied on the insurer's conduct in
. renewing the policy and was left, as a result, without coverage for the
second property damage claim. [713-717]
Attorney's fees under G. L. c. 93A, § 11, were properly awarded to a party
who prevailed on a claim that its insurer was estopped to deny coverage
for property damage under a certain policy of insurance, where the
conduct that warranted finding an estoppel also required the conclusion
that the insurer engaged in unfair and deceptive acts or practices. [717]
An insurance company that made a legally correct disclaimer of coverage for
a claim of property damage under a policy of insurance did not act
unfairly or deceptively within the meaning of G. L. c. 93A, § 2, and
attorney's fees attributable to the insured's unsuccessful pursuit of cover-
age under the policy were not recoverable. [717]

[1] Mission Insurance Co. (Mission), and J. Barry Driscoll Insurance
Agency, Inc. (Driscoll). Because we conclude that American Employers
Insurance Co. (American) is liable to the plaintiff (Jet Line), we need not
reach issues argued between Jet Line and Mission, the excess insurer, and
between Jet Line and Driscoll, Jet Line's insurance agent.

404 Mass. 706                                         707

Jet Line Services. Inc. *v.* American Employers Insurance Co.

A civil action was remanded for a determination by the trial judge whether an insurance company was liable to an insured under G. L. 93A, § 11, for attorney's fees in connection with a disclaimer of coverage under a policy of insurance. [718-719]

It did not appear that the amounts of attorney's fees awarded to a plaintiff under G. L. c. 93A were excessive. [719]


CIVIL ACTION commenced in the Superior Court Department on June 11, 1982.

The case was tried before *John L. Murphy, Jr.*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Richard L. Neumeier* for American Employers Insurance Co.

*Alice E. Richmond & Edward Notis-McConarty* (*Claude J. Kazanski* with them) for the plaintiff.

*Mark P. Harty* (*John J. Davis* with him) for J. Barry Driscoll Insurance Agency, Inc.

*Timothy P. Wickstrom* for Mission Insurance Co.

WILKINS, J. The plaintiff (Jet Line) was in the business, among other things, of cleaning large petroleum storage tanks. On June 26, 1980, while Jet Line employees were working on a tank of the Mobil Oil Company in New Haven, Connecticut, an explosion caused substantial damage to the tank. At that time, Jet Line was insured to the limit of $500,000 under a comprehensive general liability insurance policy, with a broad form endorsement, issued by the defendant American Employers Insurance Co. (American). On April 29, 1981, shortly after the comprehensive general liability insurance policy had been renewed at a higher premium, an explosion caused $400,000 in damage to a large underground tank owned by the United States Air Force in Newington, New Hampshire, in which Jet Line employees were working.

This appeal by American largely concerns the question whether it is liable to Jet Line for the damage to the Air Force tank caused by the Newington explosion. A judgment was entered in the Superior Court declaring that the damage to the Air Force tank was covered under the general liability policy. In answer to a question, the jury also determined that, in any

event, American was estopped to deny coverage for that damage.[2] Jet Line also obtained a judgment that it was entitled to attorneys' fees under G. L. c. 93A, § 11 (1986 ed.), in connection with its claims against American. American argues that the award of attorneys' fees was not warranted and that, if such an award was warranted, the amount awarded was excessive.

We shall explain in the first numbered section of this opinion that the general liability policy did not provide coverage for damage that Jet Line may have caused to the Air Force tank in New Hampshire. In the second numbered section, we shall explain, however, that the jury were warranted in finding that American's conduct estopped it from denying coverage for that damage. As we shall see in more extensive detail when we discuss the estoppel issue, American's conduct in handling the New Haven claim and in renewing the coverage in 1981 led Jet Line reasonably to rely to its detriment on the existence of coverage. We recognize that, because we decide that American is estopped to deny coverage of the damage in New Hampshire, our discussion of the coverage question is unnecessary to our decision. We would not, however, regard an estoppel basis for liability to be worth consideration unless the policy were first determined not to provide coverage.

We shall finally consider the award of attorneys' fees to Jet Line under G. L. c. 93A, § 11. We conclude that an award was appropriate as to Jet Line's claim of estoppel, but not as to its claim of policy coverage of the Newington explosion. The attorneys' fees award must be adjusted to reflect this difference. American, which did not disclaim coverage of the New Haven damages until over a year after the Newington explosion, has accepted liability for the damage to Mobil's tank in New Haven by not appealing from a judgment obliging it to pay for that damage (up to the policy limits). We reject American's argument that, because it alone is liable for (and

---

[2] The judgment also declared that American was liable under the general liability policy for the damage done to the Mobil Oil Co. tank in New Haven. American has not challenged that determination on appeal. We are advised that American has since settled the Mobil claim for $300,000.

has now paid) the entire New Haven damage claim, Jet Line can have no right to attorneys' fees in connection with its claim that American is liable for the New Haven damages. American's willingness to pay the Mobil claim, even though it asserts that such a loss was not covered under the policy, appears to be based on its conclusion that its disclaimer of coverage of the damage to Mobil's tank came unacceptably late. Such a late disclaimer could be an unfair or deceptive act under G. L. c. 93A, § 2 (1986 ed.). We think that the judge, who ruled that the damage to the Mobil tank was covered under the policy, should, in light of this opinion, reconsider the question whether American engaged in an unfair or deceptive act as to the Mobil claim so as to entitle Jet Line to recover attorneys' fees for its claim that American had to provide coverage of the Mobil loss.[3]

As a brief background, we recite uncontroverted facts. After the New Haven accident, employees of American in Connecticut received an opinion of outside counsel that the damage to the Mobil tank was covered under Jet Line's policy. It developed much later that the Connecticut attorney who had given that opinion may have considered the wrong policy language. In any event, American investigated the accident, established a reserve of $300,000, and entered into discussion with Mobil concerning a possible settlement. Jet Line knew of these activities when in early April, 1981, it renewed its general liability coverage with American for another year. The premium for the new policy year was about fifty percent higher than the premium for the previous year, largely because of the reserve established as a consequence of the New Haven explosion.

Also sometime during April, 1981, Jet Line agreed to perform cleaning and repair services on the Air Force tank in Newington, New Hampshire. Late in the same month, the Newing-

---

[3] As far as we can tell, Jet Line has made no claim in this action that American was estopped to deny coverage of the damage to the Mobil tank in New Haven. That kind of estoppel would be in the more common form of an insurer's prejudicially late disclaimer of coverage which courts generally will not uphold.

ton explosion occurred causing damage to the tank in the amount of $400,000.[4] Advised by New Hampshire counsel, American promptly reserved its rights concerning whether its policy covered any damage negligently caused by Jet Line in Newington. In March, 1982, American disclaimed coverage as to the Newington incident.

In June, 1982, Mobil brought an action in Connecticut. In the same month, Jet Line brought this action seeking a determination that American's general liability policy covered damage that Jet Line may have negligently caused to the Air Force tank in Newington. Ultimately, American's outside counsel in Massachusetts learned about the inconsistent positions that American was taking, i.e., denying coverage in New Hampshire while acting as if there were coverage in Connecticut, as to two incidents of substantially the same character. On December 6, 1982, approximately twenty-nine months after the New Haven explosion, American disclaimed coverage as to the damage allegedly caused by Jet Line to the Mobil tank. Shortly thereafter, Jet Line amended its complaint in order also to assert rights against American with respect to the New Haven incident.

We are now in a position to consider (1) whether Jet Line's general liability policy covered damage it negligently caused to the Air Force tank, (2) whether, in any event, American is estopped to deny coverage of that damage, and (3) Jet Line's claims for attorneys' fees under G. L. c. 93A.

1. The comprehensive general liability insurance policy, with the broad form comprehensive general liability endorsement, does not provide coverage for the damage to the Air Force tank in Newington, New Hampshire.[5]

---

[4] The Air Force's claim was settled for $400,000. The dispute between Jet Line and American as to the Newington incident (apart from Jet Line's claim for attorneys' fees under G. L. c. 93A) is over which one of them must sustain that $400,000 loss.

[5] Construction of policy language is a question of law for the judge. *Cody v. Connecticut Gen. Life Ins. Co.*, 387 Mass. 142, 146 (1982). Related jury questions are issues of fact that need to be resolved in light of the law the judge gives to the jury in his charge.

The broad form endorsement (Section VI [A] [2] [d] [i] ) excludes coverage for damage "to that particular part of any property . . . upon which operations are being performed" by the insured "at the time of the property damage arising out of such operations." We conclude that the words "that particular part of any property . . . on which operations are being performed" refers to the entire tank and not just to the bottom of the tank that Jet Line personnel were cleaning at the moment of the explosion. Jet Line was retained to clean the entire tank, and it was the entire tank on which operations were being performed within the meaning of the policy language.[6]

The restrictive view that the trial judge and Jet Line have taken of the scope of the exclusion involved in this case is inconsistent with the position that courts elsewhere have taken. The Court of Appeals for the Fifth Circuit has held that operations were "being performed" within the meaning of the exclusion when one night, while a job was in progress but no employee of the insured was working, a fire damaged an electric motor the insured was repairing. *Advance Elec., Inc.* v. *United States Fidelity & Guar. Co.*, 818 F.2d 378, 379 (5th Cir. 1987). Whether at the time of the property damage an employee of the insured is or is not in one area or another of the property on which the insured has agreed to perform operations is not significant to the coverage question. See *Vandivort Constr. Co.* v. *Seattle Tennis Club*, 11 Wash. App. 303, 308 (1974) (insured "was performing operations on the property and the injury here for which damages are claimed arose out of those operations"). Even in cases in which damage occurred to property on only part of which the insured was retained to work, courts have held that the exclusion applies to the entire property. See *Goldsberry Operating Co.* v. *Cassity, Inc.*, 367 So.2d 133,

---

[6]We have dealt with the words "that particular part of any property" in connection with subclause (iii) in the same subsection of the broad form endorsement. See *Lusalon, Inc.* v. *Hartford Accident & Indem. Co.*, 400 Mass. 767, 770-771 (1987); *Bond Bros.* v. *Robinson*, 393 Mass. 546, 547-548 (1984). These opinions provide no guidance, however, in deciding the scope of the exemption involved in this case. Nor does *Frankel* v. *J. Watson Co.*, 21 Mass. App. Ct. 43, 44-45 (1985), also dealing with subclause (iii).

135 (La. Ct. App. 1979) (damage to extensive portion of well tubing on only ten-foot portion of which insured was hired to work not covered);[7] *Vinsant Elec. Contrs.* v. *Aetna Casualty & Sur. Co.*, 530 S.W.2d 76, 78 (Tenn. 1975) (damage to entire switchboard on which insured was engaged to install two circuit breakers not covered).[8] Cf. *Continental Graphic Servs.* v. *Continental Casualty Co.*, 681 F.2d 743, 744 (11th Cir. 1982) (coverage excluded for damage to printing press and not just to gears that caused damage). Where, as here, the insured was retained to perform work on an entire unit of property, and not just a portion of it, the applicability of the exclusion to damage to the entire unit is even more apparent than in cases in which the insured was retained to work on only a part of the unit.

Jet Line advances a further argument that, because the damage to the Air Force tank in Newington would have been covered under the basic policy (that is, without the broad form endorsement), the language of the endorsement must provide coverage as well. We do not know that the premise of this argument is valid. The circumstances of the Jet Line operation and its rights concerning the Air Force tank have not been shown to the extent necessary for us to rule on whether coverage might have been available under the basic policy. In any event, however, we reject the claim that, in the circumstances, the scope of the insurance coverage provided by American must be determined in relation to the comprehensive general liability policy without the broad form endorsement. Thus we reject any claim that comparing the endorsement with the basic policy language superseded by the endorsement can produce an "ambiguity" in the endorsement's language. See *Clark Lumber Co.* v. *Lumbermens Mut. Casualty Co.*, 169 Ga. App. 430 (1984). American made no representation to Jet Line concerning the coverage before the policy was issued. Whatever grievance Jet Line might have against its agent Driscoll, which

---

[7] "We hold that the particular part of the property on which [the insured] was performing its operations was the entire part of the well." *Id.*

[8] "We cannot so construe this provision as to limit the exclusion to the precise and isolated spot upon which work was being done." *Id.*

selected and obtained the coverage, American cannot properly be held liable simply because its broad form endorsement may have provided less coverage in at least one respect than did the basic policy. Not every policy endorsement, even one labeled "broad form" and calling for payment of an additional premium, should be treated as only expanding coverage in all respects over the basic policy coverage.

2. Although the American policy did not provide coverage for the damage to the Air Force tank caused by the Newington explosion, the jury were warranted in finding that American was estopped to deny coverage for that damage.[9] There was evidence that American, knowing or having reason to know that Jet Line would act on American's conduct, induced Jet Line to renew its general liability coverage in reasonable reliance on that conduct and, as a result, Jet Line, believing otherwise, was left without coverage for the loss. These circumstances justify application of the traditional equitable principle of estoppel. See *Cleaveland* v. *Malden Sav. Bank*, 291 Mass. 295, 297 (1935); *E.V. Harman & Co.* v. *Wm. Filene's Sons Co.*, 232 Mass. 52, 55 (1919); *Boston & A. R.R.* v. *Reardon*, 226 Mass. 286, 291 (1917).

The evidence warranted a finding that the manner in which American treated Mobil's claim after the New Haven explosion induced Jet Line reasonably to assume that the damage caused by such an explosion was covered under the policy that Jet Line had renewed shortly before the Newington explosion. Until months after the Newington explosion, American acted as if the damage caused by the New Haven explosion was covered by Jet Line's general liability policy with its broad form endorsement. There was evidence that Jet Line knew before it renewed its coverage with American in April, 1981, that American was investigating the accident, had negotiated with Mobil to settle its claim, had made an offer to settle, and

---

[9] American argues that the circumstances do not justify the application of estoppel, but never says that its challenge is to the judge's denial of its motion for a directed verdict on this issue. We treat American's argument as asserting that the evidence did not warrant submitting the estoppel issue to the jury.

had established a loss reserve of $300,000 in connection with the claim Mobil had made shortly after the explosion. There was also evidence that insurance companies do not set up reserves for, or offer to settle, claims not within a policy's coverage and that insurance companies usually disclaim coverage within sixty days of notice of a claim. Driscoll, Jet Line's insurance agent, who, acting for it, negotiated the renewal of the policy at a higher premium, knew these facts. American increased the annual premium from about $58,800 in the first year to about $88,410 in the second, largely as a consequence of the creation of the $300,000 loss reserve on the Mobil claim. Jet Line agreed to pay the higher premium knowing that the increase was largely attributable to the Mobil claim.

There was, therefore, evidence of Jet Line's reasonable reliance on conduct that American knew or should have known would induce Jet Line to renew its coverage believing that damage from an explosion in a tank on which Jet Line might be working would be covered under American's policy. It is obvious that American intended Jet Line to believe that damage from explosions of the type that occurred in New Haven (and later in Newington) were covered by its policy because at the time it justified the higher premium largely on the basis of an apparently covered loss arising from the New Haven explosion. In measuring the equities, it is also significant that American had made a conscious decision that the Mobil claim fell under the coverage of Jet Line's policy after consulting outside counsel (who, the jury could have found, did not base his opinion on the broad form endorsement). American did not believe that there was an unresolved coverage question or uncertainty about the nature of the claim at the time American charged the additional premium to Jet Line based on the incurred loss arising from the New Haven explosion.

The only remaining question is whether Jet Line was harmed by its reliance on American's conduct. The answer seems straightforward. Jet Line was unknowingly left without policy coverage for an explosion that caused $400,000 worth of damage to property of another. American argues, however, that Jet Line was not harmed by its reasonable reliance on American's conduct. American says that Jet Line could not have ob-

tained insurance coverage for damage caused by an explosion in an underground tank such as the one in Newington and that Jet Line would have done the work at Newington even if it had had no insurance coverage.

Where an insurer's conduct amounting to a representation misleads an insured reasonably to believe that there is coverage for a type of loss that in fact occurs, the insured may satisfy its burden of proof of detrimental reliance (that is, that the insurer's conduct caused a loss to the insured) simply by demonstrating that the loss occurred. As a matter of fairness, the insurance company should have the burden of showing that, if the insured had not had the coverage as represented by the insurer, the insured would have sustained the same loss in any event. American thus had the burden to show that Jet Line would have proceeded with its work on the Newington contract without taking any precautionary action, even if it had had no insurance coverage. If Jet Line had known that it had no coverage for tank damage caused by it, it might not have contracted to do the Newington work, or it might have agreed to do the work only at a higher price. It might have required the owner to carry insurance or to hold Jet Line harmless for any damage caused even by Jet Line's negligence. American did not present evidence that Jet Line would have been harmed even if Jet Line had known the full story about its insurance coverage.[10]

American expresses concern about the effect on insurance company claim handling of the result we reach. This case involves special circumstances, not likely to be repeated often. An insurer erroneously concludes that a claim arising out of a particular kind of incident is covered by a policy. The insurer does not identify the error before the policy is renewed at a higher premium that reflects the incurred loss that in fact was not within the policy coverage. Before the insurer recognizes

---

[10] American did demonstrate that the general liability insurance that Jet Line obtained after the Newington explosion excluded coverage for underground tanks. There was evidence that what American provided under its policy, with the endorsement, was the "broadest" coverage available. American has not shown what course of conduct Jet Line followed after the Newington explosion concerning entering into new agreements to clean underground fuel storage tanks.

the error in its determination of coverage and advises the insured that the policy will not cover losses arising out of such an incident, a similar incident occurs causing damage. The insured has reasonably relied on the insurer's representation of coverage, and the insurer should be liable for resulting harm to the insured. A prompt and accurate determination of the coverage issue or a prompt reservation of rights could have solved the problem as to both claims. After policy renewal in circumstances in which the insurer explicitly represents in words or by conduct that a type of claim is covered, the insurer should be bound to provide coverage for such a claim to an insured who relies reasonably to its detriment on that representation.

American relies on two cases that in fact help illustrate the point of this case. In *Tracy* v. *Lincoln*, 145 Mass. 357 (1887), a wife sat by silently while her husband negotiated a loan purportedly to be secured by a mortgage given by him on property that only she owned. Later, in her absence, the husband negotiated another loan from the same person, discharging the earlier debt, with the loan again purportedly secured by a mortgage on the same property. This court said that the wife would have been estopped to deny that the property was subject to the first mortgage. *Id.* at 359. The second transaction, however, as to which the wife made no representation by her silence, did not give rise to an estoppel. *Id.* at 360. In our case, American's conduct concerning the first claim amounted to a representation of coverage and the circumstances under which American renewed the policy estopped it from denying liability for a claim arising from a similar incident occurring during the renewal term. Unlike Mrs. Tracy's conduct, American's conduct estops it as to the second transaction.

A situation somewhat similar to ours, but having a significant difference, arose in *Hartford Accident & Indem. Co.* v. *Regent Nursing Home*, 67 A.D.2d 935 (N.Y. App. Div. 1979). The insurer had settled an earlier claim concerning a nursing home patient who had fallen out of a wheelchair. The claim would have been covered under the insurance policy if it were a claim of negligence but would have been excluded if it were a claim of malpractice committed by the nursing home. The nursing home

knew of the coverage distinction before a second patient fell from a wheelchair. The court held that the insurer was not estopped to deny coverage for a claim of malpractice arising from the second fall. *Id.* at 937. In our case, Jet Line did not know before the second accident, as the nursing home did, that there was a coverage problem.

3. American objects to the aspect of the judgment that awarded Jet Line attorneys' fees in connection with Jet Line's claims that American violated G. L. c. 93A, § 11 (1986 ed.). Jet Line asserted violations of G. L. c. 93A, § 11, as to both the 1980 explosion in Connecticut and the 1981 explosion in New Hampshire. American contends that it engaged in no unfair act or practice under G. L. c. 93A, §§ 2 and 11. It further argues that, because Jet Line sustained no loss of money or property, Jet Line is not entitled to counsel fees, even if American did engage in unfair or deceptive acts or practices. In any event, American argues, the fee award is excessive.

We have little difficulty in concluding that American is liable to Jet Line under § 11 for attorneys' fees incurred in pursuing the claim that American was estopped to deny coverage of the Newington incident. The same conduct that warranted finding an estoppel also requires the conclusion that American engaged in unfair and deceptive acts or practices as to the incident. Surely Jet Line sustained a loss because of that conduct.

Attorneys' fees attributable to Jet Line's unsuccessful claim of policy coverage of damage to the Air Force tank are not recoverable in this action. American's denial of coverage of the damage to the Air Force tank under the policy was legally correct, and hence was neither an unfair nor a deceptive act. See *Gulezian* v. *Lincoln Ins. Co.*, 399 Mass. 606, 613 (1987). As a general rule, an insurance company does not act unfairly or deceptively within the meaning of G. L. c. 93A, § 2, with respect to a claim made under a policy of insurance simply by making a legally correct disclaimer of coverage.[11]

---

[11] Notice that Jet Line's G. L. c. 93A claim is made under § 11 (concerning the rights of one who engages in the conduct of a trade or business), and that § 11 does not incorporate violations of G. L. c. 176D, § 3, cl. 9 (1986 ed.), within its prohibitions as does G. L. c. 93A, § 9.

American's obligation to pay attorneys' fees in connection with Jet Line's G. L. c. 93A claim related to the New Haven explosion is not so easily resolved. We turn first to American's claim that Jet Line has sustained no loss arising out of the New Haven explosion because Mobil's claim was settled without any cost to Jet Line.

American argues that attorneys' fees may properly be recovered only if the claimant sustained a loss of money or property due to the defendant's unfair or deceptive acts or practice. Section 11 provides that, if the judge finds a violation of § 2, the plaintiff shall "in addition to other relief provided by this, section and irrespective of the amount in controversy, be awarded reasonable attorneys' fees and costs." That language says nothing explicitly about proof of a loss of money or property as a condition to a right to recover attorneys' fees, but the reference to an award "in addition to other relief" indicates that relief solely in the form of attorneys' fees may not be had. This is the view expressed in *Levy* v. *Bendetson*, 6 Mass. App. Ct. 558, 566-567 (1978), where the plaintiff failed to prove any damages. In another § 11 case, the Appeals Court allowed recovery of attorneys' fees where the plaintiff appeared to have lost the use of money but offered no proof of the dollar amount of that loss. See *Shapiro* v. *Public Serv. Mut. Ins. Co.*, 19 Mass. App. Ct. 648, 657-658 (1985).

Under § 11, a plaintiff must be entitled to relief in some other respect in order to be entitled to an award of attorneys' fees. The *Shapiro* case reached the proper result on its facts because the defendant's violation of G. L. c. 93A, § 2, caused a loss of money that, on proper proof of the amount, would have entitled the plaintiff to relief and the award of attorneys' fees was within the statute's purpose. A plaintiff suing under § 11, however, cannot recover attorneys' fees for merely identifying an unfair or deceptive act or practice. Under § 11, that unfair or deceptive conduct must have had some adverse effect upon the plaintiff, even if it is not quantifiable in dollars. We reject any suggestion to the contrary in the *Shapiro* opinion.[12]

---

[12] The question of the right to recover attorneys' fees alone does not arise under G. L. c. 93A, § 9, where similar language appears concerning attor-

The trial judge awarded attorneys' fees to Jet Line in connection with the damage to the Mobil tank in New Haven at least in part on the ground that American's late disclaimer of liability was erroneous as a matter of law. We have determined that the policy did not cover that loss, and that the disclaimer of coverage was, therefore, legally correct. We are unable to determine, however, whether American nevertheless engaged in an unfair or deceptive act with respect to the Connecticut accident, that is, even though its belated statement that it was not liable under the terms of the policy was sound. We remand the case for a determination, on the standard we have just prescribed, whether American is liable to Jet Line for attorneys' fees under G. L. c. 93A, § 11, with respect to any aspect of the Connecticut explosion. In his discretion, the judge may consider evidence of events occurring after trial.

We see no error in the judge's treatment of the attorneys' fees issue with respect to American's claim that the amounts awarded were excessive. The only necessary adjustments in the award of attorneys' fees are (1) the elimination of any award for legal services rendered in an attempt to demonstrate that Jet Line had policy coverage for the damage caused by the explosions and (2) a reconsideration in light of this opinion of Jet Line's right, if any, to an award of attorneys' fees incurred with respect to the New Haven explosion.

4. The judgment entered on June 6, 1987, is vacated, and a new judgment shall be entered consistent with this opinion and reflective of the posttrial settlement of Mobil's claim for damage to its tank in New Haven.

*So ordered.*

---

neys' fees, because nominal damages of $25 are awarded under § 9 if proof of greater damages is not made. See *Trempe* v. *Aetna Casualty & Sur. Co.*, 20 Mass. App. Ct. 448, 457-458 (1985), where attorneys' fees were properly awarded in a § 9 action to a person who was deceived but "failed to show the amount of the actual damages caused by the unfair acts which the judge found to be wilful and knowing."